The next case this morning is 522-0612, People v. Hemmings. Arguing for the appellant is Deborah Pugh. Arguing for the appellee is Becky Ray. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning, Your Honors. Well, I think we are ready for you guys if you're ready for us. So whenever you are, you may begin. Good morning, Your Honors and counsel. My name is Deborah Pugh and I represent the appellant Donald Hemmings. There is a complete breakdown of the discovery process in this case. The state failed to disclose multiple pieces of evidence and the harm from that was exacerbated by Donald's own attorney's errors, including her failures to review some of the discovery that she actually did receive. But in spite of, although there are many different pieces to this case and there's a lot of moving parts, I'd like to really focus on specifically the Facebook messages that the state relied on. And while those messages involve both a Rule 412 discovery violation and a federal due process violation, I would also like to focus specifically on the Rule 412 aspect of the violation. So Rule 412 requires the state to disclose, upon request by the defendant, any written statements by the defendant and any witnesses the state plans to call it trial. Here, defendant asked for those statements within days of his arrest. The state claimed that they had given the defense counsel everything, including all written statements from the defendant and any written statement from any witness who planned to testify. But that was false. The state planned to rely on these alleged written statements between Imani Kaufman and Donald Hemmings, the defendant. So Imani Kaufman, who's at the center of this case, was arrested while she was high on drugs and trespassing. And when she was arrested, police found more drugs in her purse. And they told her that if she were to find somebody else to set up deals with, that she wouldn't be charged in that case. So Imani, at that point, still high, was in a bit of a pickle. And while she was still in the holding cell at the jail, she allegedly received a written message from Donald serendipitously suggesting that he sell her drugs. Then after that, according to testimony admitted at trial, which there were more written messages exchanged that somehow scheduled a meeting at the Farm Fresh grocery store. But we don't know any more information about how that happened because we don't have those messages. But at the Farm Fresh grocery store, Imani Kaufman immediately went out of the view of Detective Dukes, the surveilling this alleged deal, and then met up with her friend Peggy, who's the cashier. And then Peggy let her into a back room at the store, the private back room at the store. And supposedly more written messages were exchanged there in which Imani tried to get Donald to come engage in this drug deal away from Detective Dukes' view. And Donald said, no, let's meet up. Who knows what was actually said in those statements. But he said, let's meet out in front. But the state didn't disclose that these messages occurred at all. The state didn't disclose their existence, didn't disclose the substance, and certainly did not preserve and disclose the messages themselves, which is obviously commonly done now in this age of electronic messaging. So Donald showed up at the trial not knowing that there would be all of this testimony about written messages that he allegedly exchanged with the informant Imani Kaufman. He was basically ambushed by this evidence, which the state immediately began relying on. And this was just a clear cut violation of Rule 412. These were messages that were requested that the state did not turn over. There's really no way of arguing around it being a 412 violation. And so then, for instance, in this case, this court recently made a similar decision in the unpublished case Johnson, where there was a Walmart video that where the defendant was allegedly, there was a video of him allegedly engaging an aggravated battery in a Walmart parking lot. And the state in that case did disclose the existence of the video, did disclose what it claimed the video contained, but just failed to obtain the video itself from Walmart. In that case, the trial court dismissed the charges as a sanction against the state. This court stressed the serious nature of the Rule 412 violation and the harm of the Rule 412 violation, but remanded for a trial with sanctions that were somewhat less strict than the dismissal. Were these Facebook messages in possession of the state? Well, they were in the possession of Imani Kaufman, who was an agent of the state. And so in Johnson, the video was in possession of a genuine third-party Walmart, and yet the state was still required to obtain it here. Imani Kaufman was an agent of the state. She received consideration not being charged for her offenses in order to work with the state. So this was within the purview of 412. And plus, this court said that the state, in the Walmart case, the state should not be allowed to rely on evidence, which was specifically requested by the defendant, and then face no consequences for negligently failing to preserve that evidence for the defendant's possible use. Now, we don't know whether the state did preserve these. The state said, I mean, whether the messages could have still been available. The state still hasn't turned them over and never made any effort to turn them over. But worse than the Walmart case, the state affirmatively claimed that these messages did not even exist. The state affirmatively claimed that it had turned over all the discovery involving any written messages related to Donald or related to any of the testifying witnesses. And so it's much worse than that case. In the harm, in the harm, in Johnson, we don't know whether the video would have shown something different from what the state said. But that's not the issue of whether the state's misrepresenting the evidence or anything like that. In terms of an ambush, though, wouldn't he have had the messages? He was messaging back and forth, right? That was the indication that there were messages back and forth, correct? Well, that assumes the truth of what Imani Kaufman was testifying. And so if we don't know whether that's even true, the state didn't preserve it or disclose it. We don't know. Was there a phone call? Was there who knows what happened, actually? Would the remedy then be necessarily a mistrial? Or was there a motion for a mistrial at that point in time? No, no, there wasn't a motion for a mistrial. This goes into the forfeiture issue that the state will surely bring up, which is that defense counsel made the wrong objection when the state began asking Imani Kaufman about these messages. The defense counsel made the wrong objection, saying that it was hearsay. But then at the motion for a new trial, counsel did raise the correct issue, and the parties did not say that it had been forfeited. All the parties argued the merits and the trial court ruled on the merits. And so under Enoch and Washington and other Illinois Supreme Court cases, because this court has a ruling that it can review, it's not considered forfeited. In fact, the state forfeited forfeiture because it could have argued that defense counsel made the wrong objection. Wouldn't the appropriate motion have been a motion to continue? I mean, doesn't Robinson basically require that? Well, there are other cases, though, too, where there could have been a motion to continue. And this goes into also why counsel was ineffective. There are many, many parts of why counsel was ineffective in this case. And yes, of course, she should have stopped everything. It's a little bit baffling that counsel saw that this was happening. In fact, the state talks about this, why that counsel made all these errors. And this shows ineffective assistance of counsel because there could be no possible reason for failing to issue the proper objection. But even if there had been a continuance, the jury had already heard all of this and the state still never disclosed any of the evidence. And so we don't know whether a continuance could have even been helpful. Of course, of course, defense counsel should have done the correct thing. But the fact is, But doesn't Robinson stand for the proposition, though, that that first motion to continue would be appropriate if that were requested, that would give the parties time to complete discovery? Oh, sure. Yes. I mean, that's absolutely counsel should have done the right thing and said, stop, wait, this has not been disclosed. We should continue this in order to determine what happened. But counsel didn't do that. And that's and that's where her ineffectiveness lies. And so even so even if the issue is considered preserved in terms of it being in the motion for a new trial, if counsel didn't do the correct thing by asking for continuance, there's no there's no strategy there. And as Johnson shows, you don't need to show that the evidence that wasn't disclosed was actually helpful. We're not arguing this is a Brady violation. This is that it's a 412 violation. And it's for the defense counsel to decide the defendant to decide whether evidence that should have been disclosed would have been useful to it, not for the state to decide. And so in this case, defense counsel did make the wrong decisions, but that just shows her ineffectiveness. And so even though even though the issue might not have been she made the wrong objection, but it's still the harm is still there. And defense and Donald went into this went into this case as an ambush. One has to wonder why the state would prefer Imani Kaufman is a drug addict who was arrested while she was high, then set up this alleged deal when she was high. Everything happened while she was high. And then the trial is taking place. I think two years later, definitely, definitely at least a year later in the state would prefer to have her her surprise testimony about these messages as opposed to presenting the messages themselves, which, you know, in Crosetti brand and other Illinois Supreme Court cases is very commonly done. There's a whole body of law about how to how to authenticate Facebook messages and lay the foundation and so forth. Why did the state not do that? And the state says that they're not responsible for it. And that's what the court found below, because they weren't in the possession of the state. But Johnson shows the state has an obligation if it's relying on evidence to try to get it. And here, Imani Kaufman was, in fact, an agent of the state. And so there's a clear cut violation of Rule 412. And the harm is implicit in the failure to turn it over. And because we don't know how defense counsel could have used it. We don't know what it could have said. I'm running out of time. And so I don't know if anyone has any further questions or if I should keep going. Now, your time is up, but we will have time. You will have five minutes in rebuttal. So. So, yeah, for these reasons, shoulder any questions. Not at this time. I guess my question is the evidence that you say should have been disclosed. It's it's these messages back and forth between Imani and the defendant setting up the arrangement. But the evidence I mean, the trial is on. He did show up. They did exchange money and drugs. He was caught after the fact busted almost immediately with the marked bills. And she has the drugs. So how is it? How do you show prejudice about who set up the meeting when the crime is what happened? I want to say that in Johnson, there was no indication that the that the video showed anything but what the state said it did and that there was any prejudice related there. But here, the whole question, this all goes to what happened. But how? Why did why did they end up going to the Farm Fresh where Imani knew she'd be able to talk to Peggy and get into this back room, specifically discounting the rule that the guidance she was given by Detective Duke saying stay within my sight. She immediately disregarded that, went into this private back room. And the only person found with drugs in this case is Imani. Donald, who allegedly, according to Imani, just got back from the city, having gotten a lot of drugs, was not even able to give her the amount of drugs that she allegedly asked for. The state trial defense counsel was suggesting maybe she was giving him money that she owed him. Maybe that's why he said, no, just meet outside. We don't have to go inside. She said, let's meet in this private room. And he never had drugs. Detective Dukes never saw any drugs being exchanged. He did have the money and she had drugs. But we don't know. Did she did Peggy give her the drugs? Did she find it? Did she know she could get them in the back room? Is that why she only had three when she was supposedly she thought she'd be able to get five? And why, if Donald is back from the city, she thought that some of the some of the pills were actually fake because they looked different from the others. And in her vast experience with these things, she thought that they could have been fakes. None of this adds up. Why would Donald, back from the city, suggest solicit selling her drugs, but not being able to come up with even the five pills that she asked for? There are a lot of questions here. And why did he want to meet in public? But she wanted to meet in private. So, yes, he did have the marked bills. And yes, she did have drugs. But this is not actually as clear cut as it seems, given if we only knew why did they go to Farm Fresh? Like and what did she say about meeting in the back room? Why did she want to be outside of Detective Duke's site? It's not it's this is a small case involving the small amount of fentanyl. But there are really a lot of questions. It's not it's not as straightforward as most sort of drug handoff cases where then the defendant is found with what the facts all just add up. And where the informant does want to meet in front of the detective here, it's the exact opposite of what you would expect, where the informant wants to meet in private, but the alleged dealer wants to meet in public. And so we've given we'll give your opponent a little extra time if necessary. But you will have some time and reply. Ms. Ray, whenever you're available. Ready? May it please the court, counsel, I'm Becky Ray arguing for the state. And I would first like to address the Facebook message that Facebook messages that counsel has brought up. The purpose of discovery is to protect against surprise, unfairness and inadequate preparation for trial. And as Justice Vaughn pointed out, if the defendant was a party to these messages, certainly he was not surprised by the fact that they were raised. He was a party to them and he would have known the substance of those messages. So certainly there was no no surprise, no no claim of inadequate preparation for trial could be sustained on that given that he was a party. And additionally, there was some messaging that occurred. That's obvious. The buy was arranged. It was arranged to be held at the Farm Fresh in Centralia. The defendant didn't deny that it was him in the video that met Imani Kaufman at the Farm Fresh. They even conceded such in the lower court during closing arguments. So clearly there was some communication. And again, defendant didn't just coincidentally show up at Farm Fresh and meet with Imani Kaufman. He would have known there was some sort of communication to arrange that. So as a party to that, he would have had access to those messages, the same as Imani Kaufman and the same as the state. Now, the state concedes there were no messages turned over. However, they were never in the state's possession to turn over. And the prosecutor indicated that they had turned over everything that they had, whether that be the Facebook messages, the videos, the reports, they had turned over everything in their possession and they didn't have these messages. And so there's no discovery violation there. They can't turn over what they don't have. And I am certain I cited in my answer brief a case where there was a letter that was in the possession of someone not a police officer. And the defendant in that case raised an issue that the police didn't turn that letter over and the court there found, well, it wasn't it was never in the state's possession to turn over. Additionally, the defendant wasn't disclosed by or excuse me, the defendant wasn't prejudiced by the failure to disclose these messages. There was a communication to me and buy these drugs, but that's not the offense. He wasn't charged with attempt, which where the message might be, you know, relevant, I guess. He was charged with the sale of the drugs. That was all caught on the buy video, which was turned over. The defendant had the oath money in his possession and the confidential source had the fentanyl in her possession after this transaction took place outside the farm fresh. So the evidence was not close in this case. And so the defendant was not prejudiced by this. There was nothing of substance in the messages went to any of the elements of the offense with which the defendant was charged and convicted. There's nothing that says that there has to be a communication, that that communication has to be written, etc. And the elements of the offense were met without reliance on those Facebook messages. Yes, there was testimony about that from Imani Kaufman. But the question put to her when she answered that she had contacted the defendant via Facebook messaging was where did you first contact him? In no way does that question specifically elicit from her that she sent him a Facebook message or that he sent her a Facebook message offering to sell her drugs. It's just that that was her answer to that particular question. And as far as Johnson, the Johnson case, in reading that case, the state there relied on the Walmart video to obtain an arrest warrant. That was not the case here. The police, in this case, witnessed the actual transaction and made the arrest after the confidential source turned over the fentanyl and found the oath money. They found the oath money on the defendant and made the arrest. They didn't rely on the Facebook messages to get an arrest warrant for the defendant. And they didn't rely on the Facebook messages to arrest the defendant. They relied on the transaction itself, which was what the offense was. And with regard to the messages, when the state recited its opening statement, there was some reference to messages in that opening statement. And there was it didn't the state didn't indicate whether it was a Facebook message, a text message, some other kind of social media messaging. But that was the first opportunity. If the defendant had been surprised for him to object and request a continuance there. And he did not do that. And then when Imani Kaufman testified about the Facebook messages, that was the second opportunity, a very obvious opportunity for the defendant to again request a continuance and say, wait a minute, I don't have these messages. I need to do some interviewing of this confidential source. I need to do some discussions with my client about whether he was a party to these messages. But again, the defendant didn't do that. He didn't object when it was most obvious that he should have done so. And he didn't ask for a continuance. As a matter of fact, it seems from the record that the court was pretty willing to have granted that continuance had the defense even asked for it. But before the court could even offer that, defense counsel said, I'm not asking for a continuance. My client's in jail. You know, he's not going to sit here and wait for another trial date. So, instead of taking the least, the path of least resistance, in other words, that would have resolved this, which would have been compliance with the discovery if the messages even still existed at that point. The defendant didn't object and then asked for, you know, sanctions against the state, a new trial because the state didn't turn them over. But that issue has forfeited. There was no objection at the trial, no request for continuance. And ENOC requires both an objection at trial and raising the issue in a post-trial motion. Well, they raised it in a post-trial motion, but they didn't object. So, ENOC applies and forfeiture applies here. And this court should should deem that this issue is forfeited. Can you address the issue of ineffective assistance as it relates to those objections? I will. Even mistakes in trial strategy or just mistakes in general don't necessarily amount to ineffective assistance of counsel. I think when you look at the total record in this case, counsel clearly was able to cross-examine Imani Kaufman and she was able to do it effectively. Those messages didn't really play into whether or not, again, the transaction took place and the defendant didn't didn't argue that he wasn't present in that video. So, really, the messages didn't really play into the argument and counsel would not necessarily have had to argue anything about those messages. It was the transaction and she it was the transaction that she should have jumped on and she did. She said, you can't see the drugs in the video, you can't see the oath money in the video, you can't see the exchange of that. And as counsel here pointed out, there was a difference in the three fentanyl beans that the confidential source received and there was argument about that, that if the defendant had just gotten back from the city and had the drugs on him, then why weren't all of the the beans the same, etc. Well, you know, she raised those issues of credibility and she raised the issues of the validity of the evidence and what could actually be seen and not seen in the videos and also raised the fact that Detective Dukes and the confidential source even said that the transaction, the actual exchange of money and the drugs occurred in different places, so in the video. And so just the fact that she may not have objected to those Facebook messages coming in, that could have been a matter of trial strategy for her. You know, maybe that wasn't important at the time, maybe the focus was on you can't see this transaction occurring on this video and therefore my client is not guilty. I see that I'm almost out of time. I would stand on my brief for any of the other issues raised and I would entertain the court's questions if there are any. Well, we did, I did mention that I would allow you a little extra time since we gave counsel a little extra time, so if you want to address anything else, feel free for another minute or so. Otherwise, we can see if there are any questions. I'm good to take questions, Your Honor. Thank you. Okay, Justice Schoeller, any questions, Justice Bond? No questions. Okay, now hearing that, would you still want another minute or not? No, I'm fine, thank you. Okay, all right, thank you. All right, Counselor, you have five minutes. Okay, thank you, Your Honors. There are several things to address here. First, opposing counsel doesn't deny that the state did not even turn over, did not even disclose the existence or the substance of the messages. The focus is on whether or not they were in the state's third party and the state had no way of obtaining these messages, which of course is not true given that Imani was an agent of the state. That still doesn't explain why they wouldn't disclose the existence of these messages, the fact that they intended to rely on them. And the state goes on to to say that there's a difference between Johnson in this case because in Johnson, the video was relied on in arresting the defendant, whereas here the state was relying on the messages to prove his guilt. And that's a distinction without a difference. The fact that the messages weren't part of the reason that he was arrested or weren't in terms of the indictment or information, that's not relevant. The point is that this is a Rule 412 violation and whether it's being relied on. And even if the state hadn't relied on it, period, it's still a clear Rule 412 violation. It's up to the defendant to decide whether or not to be using these messages, which were clearly asked for and not turned over, not even the substance of them. Now, the state also says that there was no reason to turn these over. There's no harm because the defendant made these statements or was involved in this. And so, therefore, he would know that what they said. This is essentially an argument that it's never necessary to turn over any incriminating statements by a defendant because the defendant would know what he said. I mean, this is not for the state to decide whether these statements are true. This is for the jury to decide in saying that the defendant knows what he said. This is going in with the assumption that all the evidence that the state is presenting is true. And that's not our role and that's not the state's role. That's the jury's role to determine whether or not these statements are true. And so, the idea that Rule 412 doesn't really apply or Rule 412 is meaningless, I think, is essentially that the defendant's statements don't have to be turned over because the defendant made them. I mean, same within Johnson. Why should the defendant have to be allowed to see the video? If he did this aggravated battery, he knows what he did. Why should he be able to have the evidence that the state intends to rely on of the actual video of it? The state's argument just makes no sense in terms of that. And the state says that the messages were not, there was no harmlessness issue because the state, versus saying that maybe the defense counsel had a reason for not, for issuing the wrong objection. It's hard to imagine why a person would issue an objection that's knowingly the wrong objection hearsay. If she was objecting to the evidence, clearly, she was just using the wrong objection. In saying that the messages didn't play a part in defense counsel's arguments, that's not true. Defense counsel was saying exactly what I was saying, which is these messages would have shown why did Imani go into the back room? How did this all happen? How did, if these messages even exist, we don't know whether it was just a phone call, or she calls him and says, you know what, Donald, I have the money I owe you. Why don't you meet me at the Farm Fresh and I'll give you the money? We have no idea what actually happened in terms of, like, yes, there was a plan to meet up, but we don't know whether it was just a call like that, or we don't know whether what Imani was saying, maybe it was true. We don't know. But we also, if it was true, we also don't know why did she want to meet in the private back room? And again, yes, he did have the money on him, but he didn't have any drugs. And again, Imani is the person who was high at the time, had her own drugs on her when she was arrested, then got more drugs, possibly from this back room, we don't know. And then as far as Enoch goes, which the state was saying that this issue is not preserved, I just want to read a quick quote from there, that Enoch says that when it's talking about, Enoch is talking specifically about where there's a motion or written motion for a new trial that doesn't include an issue, but then the issues argued at the hearing of the motion for a new trial, that the concern is that if the state's first opportunity to object, however, when no motion for a new trial is made, the first opportunity the state has to object to the defendant's failure to comply with the statute is when the defendant raises it in appeal. Here, the state had the opportunity to respond to that argument in the motion for a new trial, the state did respond, the court ruled on its merits. And so if the state really believed that this was unfair or that it was, they knew that defense counsel was objecting to the admission of these messages for the wrong reason, because obviously this is not hearsay. And so there was, but the court had an ability to rule on it and this court now can review the court's decision. Things did not operate as they should have done because counsel was ineffective in various ways, but as it happens, this court now does have that ruling to review. And so if there are no further questions, I ask that this court reverse the conviction and remand for a new trial. Okay, thank you. Justice Scholar, Justice Vaughn, any questions? No questions. No questions. Okay. Thank you both for your briefs and your arguments today. We will take the matter under consideration and issue our ruling in due course.